**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CLINTON COUNTY, MISSOURI, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:19-CV-03169-AGF |
| v. | ) ) ) | |
| ALLERGAN PLC, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant Walmart Inc. ("Walmart") submits this response in opposition to Plaintiff's Motion to Remand. Dkt. Nos. 15, 16 ("Remand Motion").

**INTRODUCTION**

This lawsuit is one of more than 2,600 opioid-related lawsuits filed by government entities against various defendants, including manufacturers, distributors, and retailers of prescription opioid medications. Plaintiff seeks damages for unreimbursed costs for "health care, pharmaceutical care, law enforcement, emergency medical services, and fire-rescue" purportedly incurred "as a result of the opioid epidemic." (Pet. ¶ 8 (Dkt. No. 1-1)).

On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") created the Opiate Multidistrict Litigation pending in the Northern District of Ohio, *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio) ("Opiate MDL") for cases just like this one—cases in which plaintiffs allege that: "(1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders

of prescription opiates." *In re: Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017). Thousands of cases have since been transferred to the Opiate MDL.

The present case is factually and legally indistinguishable from those cases. Just as it has done hundreds of times before, the JPML has already issued a Conditional Transfer Order ("CTO"), conditionally transferring this case to the Opiate MDL. (CTO-125, JPML Dkt. No. 6419 (Dkt. No. 12-2)). Following its normal procedure, the JPML temporarily stayed that order to allow Plaintiff the opportunity to file an opposition. *Id.* As with the thousands of cases before this one, at one of its upcoming hearings, the JPML will ultimately order the case transferred to the Opiate MDL. That is where Plaintiff's Remand Motion should be decided.

Therefore, rather than decide Plaintiff's Remand Motion now, the Court should grant Mallinckrodt LLC's Motion to Stay ("Stay Motion") (Dkt. Nos. 11, 12) to allow the JPML time to finalize its transfer decision. Once transferred, the Opiate MDL will decide whether this case and all of the similar cases already pending before it should remain in federal court or should be remanded. That is precisely the course taken by numerous judges within this district (*see* Stay Motion, Dkt. No. 12-1) including one virtually identical case stayed by Judge John Ross less than two weeks ago, Order, *Camden Cty. v. Williams*, No. 4:19-cv-02930 (E.D. Mo. Dec. 26, 2019) (granting stay motion) (previously attached at Dkt. No. 19-1). And this Court has been joined by scores of judges across the country who have reached the same conclusion. (*See* Stay Motion, Dkt. No. 12-1). The same result should hold here.

Should this Court decide to depart from those judges who have found a stay appropriate and reach Plaintiff's Remand Motion now, it should nevertheless be denied. Plaintiff's claims present a federal issue that should be decided by a federal court. Plaintiff contends that its claims arise solely and independently under state law, but simply omitting the necessary federal law from

a complaint does not change the reality that its claims arise solely from federal law.  The federal aspect to this case is not, as Plaintiff contends, some small element.  On the contrary, the sole source of Defendants' alleged duties underpinning this case is the federal Controlled Substances Act ("CSA"), and *only* the federal CSA.  Plaintiff's reliance on district court cases from a handful of other jurisdictions is misplaced, as courts nationwide have found that the jurisdictional questions presented in opioid cases are sufficiently complex as to warrant stays pending transfer to the Opiate MDL.  To the extent the Court decides to reach Plaintiff's Remand Motion (which it should not), it should be denied.

## BACKGROUND

On September 30, 2019, Plaintiff Clinton County filed a Petition in the Circuit Court of the City of St. Louis, Missouri.  (Dkt. No. 1-1).  On November 27, 2019, Walmart timely removed this action under federal question jurisdiction. (Dkt. No. 1).  On November 29, 2019, Mallinckrodt LLC and SpecGx LLC tagged this action for potential inclusion in the Opiate MDL.  (JPML Dkt. No. 6360).  On December 10, 2019, the JPML issued a conditional transfer order ("CTO"), finding that this action appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster."  (CTO-125, JPML Dkt. No. 6419 (Dkt. No. 12-2)).  On December 11, 2019, Plaintiff opposed CTO-125 (JPML Dkt. No. 6425) and on December 23, 2019, Plaintiff moved to remand and filed a memorandum in support (Dkt. Nos. 15, 16).  On December 12, 2019, Mallinckrodt LLC and SpecGx LLC moved for a temporary stay of all proceedings in this case until the JPML renders a final decision on whether to transfer this action to the Multidistrict Litigation in the Northern District of Ohio.  (Dkt. Nos. 11, 12).

**ARGUMENT**

I. **THIS COURT SHOULD STAY THIS ACTION PENDING THE IMMINENT TRANSFER DECISION.**

As an initial matter, and as set forth more fully in the Stay Motion, the Court should not decide Plaintiff's Remand Motion on an expedited basis or at all. Plaintiff's allegations are nearly identical to the allegations in the thousands of opioid lawsuits that have been transferred to the Opiate MDL. The JPML has already entered a CTO, finding that this case appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster." (CTO-125, JPML Dkt. No. 6419 (Dkt. No. 12-2)). As is the JPML's typical procedure, that order is currently stayed to allow Plaintiff the opportunity to oppose, *id.*, and the matter will be taken up at one of the JPML's upcoming hearing sessions.[1]

Because the JPML has already transferred thousands of cases from federal courts across the country, including several from this court, it is likely this one will also be transferred. (*See* Stay Motion, Dkt. No. 12-1). Once transferred, the Opiate MDL will decide whether this case and all of the similar cases already pending before it should remain in federal court or should be remanded. This process promotes the purpose of multidistrict litigation—to conserve judicial resources and ensure consistency in rulings. Order at 3, *Cty. of Jim Hogg v. Purdue Pharma L.P.*, No. 4:19-cv-02816 (S.D. Tex. Sept. 4, 2019) (Rosenthal, C.J.) (attached as Exhibit A) ("The pending motion to remand presents factually and legally difficult issues. Other cases consolidated before the MDL transferee court in Ohio present similar removal issues, making a stay appropriate to avoid duplicative litigation of those issues, to improve judicial economy, and to reduce the risk of inconsistent results."); *Oklahoma ex rel. Pruitt v. U.S. EPA*, 2015 WL 4607903, at *4 (N.D.

---

[1] *See* https://www.jpml.uscourts.gov/hearing-information.

Okla. July 31, 2015) ("[I]t would undoubtedly be a waste of judicial resources for plaintiffs' cases to proceed if it is ultimately determined that jurisdiction is appropriate only in a [MDL]."); *Utah v. Envtl. Restoration, LLC*, 2018 WL 317838, at *2 (D. Utah Jan. 5, 2018) ("[N]ot staying the issue would result in the parties and the Court running the risk that extensive time and resources will be expended on the briefing of the [jurisdictional] issue, only to have [the] JPML transfer the case before a decision can be reached."); *New Mexico ex rel. Balderas v. Volkswagen Grp. of Am., Inc.*, 2016 WL 4072342, at *2 (D.N.M. Apr. 27, 2016) ("[I]t would be a waste of this Court's judicial resources to consider a motion to remand on a case that ultimately may be transferred to the MDL.").

Plaintiff argues that the Remand Motion may not be timely addressed in the Opiate MDL following transfer. (*See* Remand Motion at 1, 15). However, Judge Ross rejected that concern less than two weeks ago when he stayed a virtually identical case pending transfer, "The Court notes that Plaintiff will have a full and fair opportunity to present its arguments to the JPML or to the Honorable Dan Aaron Polster . . . ." Order at 1, *Camden Cty. v. Williams*, No. 4:19-cv-02930 (E.D. Mo. Dec. 26, 2019) (previously attached at Dkt. No. 19-1). Numerous other district courts have similarly rejected Plaintiff's argument. (*See* Stay Motion at 10-11 (citing Order at 4, *Bd. of Cty. Comm'rs of Seminole Cty. v. Purdue Pharma, L.P.*, No. 6:18-cv-00372 (E.D. Okla. Apr. 3, 2019) (previously attached at Dkt. No. 12-3) ("Plaintiff argues that the MDL court may not take up its remand motion for some time and in fact has issued a moratorium on the filing of any more motions for remand. An actual prohibition is unlikely, however. . . . The Court is confident that plaintiff's remand motion would be heard and ruled by the MDL court in due time.")); *see also* Order at 5, *Bd. of Cty. Comm'rs of Osage Cty. v. Purdue Pharma L.P.*, No. 4:18-cv-00461-GKF-JFJ (N.D. Okla. Nov. 14, 2018) (attached as Exhibit B) (granting motion to stay despite

"moratorium" given Judge Polster's "preference for a 'framework' that would allow consistent resolution of remand motions.")).

Moreover, any delay caused by a stay to allow the JPML to render its decision on transfer would be minimal. The JPML has already started to act on this case and finalizes its decisions expeditiously. *See* Order at 3, *Cty. of Jim Hogg v. Purdue Pharma.*, No. 4:19-cv-02816 (S.D. Tex. Sept. 4, 2019) (attached as Exhibit A) ("The potential prejudice to the County if a stay is granted is from delay. That potential for prejudice is reduced by the relatively expeditious pace of the JPML's decision on transfer."); *Takoma Reg'l Hosp. v. Purdue Pharma, L.P.*, No. 2:19-cv-157 at 1, 3-4 (E.D. Tenn. Oct. 4, 2019) (attached as Exhibit C) (staying case and finding that "months of delay in a case that would . . . probably take years to resolve is [not] likely to yield serious prejudice," but rather, is "simply the price of uniformity, which has long been—and for good reason—a central goal of the federal judiciary."). Nor would any prejudice result from having this case be part of the Opiate MDL. The parties and the Court have made substantial progress there—discovery has been active for more than one year including comprehensive written discovery, approximately 300 defense depositions, tens of millions of documents produced, and dozens of expert reports and depositions. Plaintiff has made no meaningful effort to progress this case in state court.

In short, a stay is warranted to best serve judicial efficiency and ensure consistent treatment of an action nearly identical to thousands of other cases.

## II. PLAINTIFF'S CLAIMS ARISE UNDER FEDERAL LAW AND THE COURT MAY EXERCISE FEDERAL QUESTION JURISDICTION OVER THIS ACTION.

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258

(2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). Courts have found these factors to be satisfied in cases where state law claims are predicated on violations of federal statutes governing complex, nationwide regulatory schemes for which uniformity is essential such as the CSA. *See, e.g.*, *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*).[2] Not only does Plaintiff's action satisfy all four factors, but removal is especially proper because Plaintiff's action is indistinguishable from the nearly 2,600 actions currently pending in the Opiate MDL.

### A. The Petition Necessarily Raises a Federal Issue.

Plaintiff's state law claims "necessarily raise" a federal question because the asserted right to relief under state law necessarily requires resolution of a federal question. *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467 (7th Cir. 2015); *N. Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 981 (2018) ("[W]here the vindication of a right under state law necessarily turns on some construction of federal law, the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331.") (alteration and internal quotation marks omitted); *Bd. of Comm'rs of Se. La. Flood Prot. Auth.–E. v. Tenn. Gas Pipeline Co.* ("*Louisiana Flood*"),

---

[2] *See also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (state law claims premised on cable provider's alleged violations of federal Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1022 (2d Cir. 2014) (state law claims premised on violations of "federal law duties" arising under Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank,* 824 F.3d 308, 315–18 (2d Cir. 2016) (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

850 F.3d 714, 722-23 (5th Cir. 2017) (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care contained in federal law).[3]  Because the only possible source of the alleged duties of the Distributor and Pharmacy-Distributor Defendants is the federal CSA, the scope of which the parties will debate, federal law is necessarily raised.  The first *Grable* factor is satisfied

Here, Plaintiff's claims necessarily raise federal issues because they are expressly premised on Distributor and Pharmacy-Distributor Defendants' alleged violations of purported legal duties that arise out of the CSA and its implementing regulations—*i.e.*, the duties to monitor, report, and prevent suspicious shipments of otherwise lawful orders of controlled substances.  Because the duties governing reporting and shipping "suspicious" opioid orders arise solely from the Controlled Substances Act ("CSA") and its implementing regulations, alleged violations of federal law form the basis for Plaintiff's claims.  *See, e.g.*, 21 U.S.C. § 823(b), (e) (identifying the question whether a distributor has maintained "effective control against diversion" as one factor the Drug Enforcement Administration ("DEA") may consider in evaluating whether the distributor should be licensed to operate); *id.* § 832 (imposing requirements to identify and report suspicious orders); *id.* § 842(c)(1)(B) (setting penalty for failure to comply with requirements related to suspicious orders or for failing to "maintain effective controls against diversion of opioids"); 21 C.F.R. § 1301.74(b) (requiring distributors of controlled substances to "design and operate a system" that identifies "suspicious orders of controlled substances" and to report such orders to the DEA).

---

[3] It is not necessary for federal jurisdiction that Walmart establish that all of Plaintiff's counts against it raise a federal question.  Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction:  "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997); *see also* 28 U.S.C. § 1367(a).

For example, Plaintiff alleges that Distributor and Pharmacy-Distributor Defendants breached their duties "to monitor, report, and prevent suspicious shipments of prescription opioids," (Pet. ¶ 7), "willfully ignored impossibly large orders," (*id*. ¶ 6), "failed to report these suspicious shipments despite their clear statutory and common law obligations to do so," (*id*.), "permitted opioid diversion to occur, engaging in a consistent pattern of illegally distributing prescription opioids, while failing to uphold their duty to report such suspicious orders," (*id*. ¶ 295), "unlawfully and/or intentionally distributed opioids or caused opioids to be distributed without maintaining effective controls against diversion," (*id.* ¶ 336), and "were under a legal obligation to take reasonable steps to prevent diversion," (*id.* ¶ 347).  These and other examples demonstrate that Plaintiff's claims rest squarely on its allegations that Defendants breached duties arising out of the CSA and its attendant federal regulations.

Although Plaintiff references "state law" and "Missouri law," (Remand Motion at 7-8, 10-11),  neither its motion nor the Petition contains a single citation to any provision of state law that could plausibly give rise to a duty to monitor and report suspicious orders or halt shipments of prescription opioids.  Missouri law does not impose any obligations on distributors comparable to those allegedly found in the federal CSA and its implementing regulations.  Rather, to distribute or dispense controlled substances within the state of Missouri, a person must register with a state agency such as the State Board of Pharmacy, and obtain the consent of the DEA to distribute or dispense.  20 CSR 2220-5, *et seq*.  Persons registered to distribute or dispense controlled substances "shall keep records and inventories of all such drugs in conformance with the record keeping and inventory requirements of ***federal law***" and any additional state rules.  Mo. Rev. Stat. § 195.050.6 (emphasis added).  No Missouri statute creates recordkeeping or reporting requirements relating to "suspicious orders" of controlled substances.  Indeed, the duties governing

reporting and shipping "suspicious" opioid orders arise solely from the CSA and its implementing regulations. Therefore, alleged violations of federal law form the basis for Plaintiff's claims.

Plaintiff offers no state regulation requiring such a monitoring system separate from the federal rules. Plaintiff also provides no state common law authority for any such affirmative monitoring and reporting duties. Instead, the authority cited by Plaintiff simply establishes certain storage and record-keeping requirements. The Missouri Narcotic Drug Act, Mo. Rev. Stat. §195.050.6, simply requires distributors to abide by their record and reporting obligations under the federal CSA. The other Missouri Code provisions cited by Plaintiff do not establish any of the alleged duties related to distribution either. (*See* Pet. ¶¶ 355-360, Remand Motion at 8.) 20 CSR 2220-5, *et seq.*, governs statutory requirements for dispensing medication. 20 CSR 2220-5.030(3)(I), requires maintaining inventories and recordkeeping of prescription drugs. 20 CSR 2220-5.030(3)(M), requires establishing and maintaining written policies and procedures for the "receipt, security, storage, inventory and distribution of prescription drugs, including policies and procedures for identifying, recording and reporting losses or thefts and for correcting all errors and inaccuracies in inventories." And 20 CSR 2220-5.060 contains similar reporting requirements, none of which are for "suspicious" opioid orders.

When there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," and the "duty would have to be drawn from federal law," a federal court has jurisdiction over that claim. *Louisiana Flood*, 850 F.3d at 723 (concluding that federal question jurisdiction exists because claims were premised on failure to satisfy a standard of care established in federal statute); *see also Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (holding that plaintiff's state claims gave rise to federal question jurisdiction because resolution relied on duty contained in federal law). Accordingly, Plaintiff

here necessarily relies on violations of federal law as the basis for their claims.

Plaintiff's citations to remand decisions from other jurisdictions offer it no support. (Remand Motion at 9-10).  Several predate the creation of the Opiate MDL by more than a decade and involved entirely different claims for personal injury and product liability under the laws of other states.  *See, e.g.*, *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838 (S.D. Ohio 2002); *McCallister v. Purdue Pharma, L.P.*, 164 F. Supp. 2d 783 (S.D.W.Va. 2001).  Others were brought by state attorneys general.  *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. For S. Cal.*, 463 U.S. 1, 21, n.22 (1983) ("[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State. . .").  And each of the opinions acknowledged that the claims—involving the laws of other states—could be decided without reference to the duties imposed by the CSA.[4]  To the contrary, the overwhelming weight of recent authority—including cases actually brought under Missouri law—supports staying cases to allow the Opiate MDL court to decide jurisdictional issues in a common fashion.  *See* Exhibits A, B, C; Order, *Camden Cty. v. Williams*, No. 4:19-cv-02930 (E.D. Mo. Dec. 26, 2019) (previously attached at Dkt. No. 19-1); Order, *Bd. of Cty. Comm'rs of Seminole Cty. v. Purdue Pharma L.P.*, No. 6:18-cv-00372 (E.D. Okla. Apr. 3, 2019) (previously attached at Dkt. No. 12-3); *see also* Stay Motion, Dkt. No. 12-1.  That same result should hold here.

Although a plaintiff may be the master of its complaint, it may not circumvent proper federal jurisdiction simply by omitting necessarily federal questions from its complaint.  *Hughes*, 478 F. App'x at 171 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S.*

---

[4] Plaintiff also cites *Burrell v. Bayer Corp.*, 918 F.3d 372, 383 (4th Cir. 2019) and similar cases for the proposition that "alternative state-law theor[ies] of liability" can defeat federal jurisdiction. (Remand Motion at 13).  But those cases involve instances where a plaintiff could "establish all the necessary elements entirely independently of federal law." *Burrell*, 918 F.3d at 382.  Here, Plaintiff cannot establish its claims without reference to duties imposed by the CSA.

*Cal.*, 463 U.S. 1, 22 (1983)).  These federal laws do not simply inform a state issue—they create the alleged duty underlying the action.

### B.  The Federal Issue Is Actually Disputed.

The federal issues raised in Plaintiff's Petition are "actually disputed" because the parties contest whether the CSA and its implementing regulations in fact give rise to duties to monitor, detect, investigate, and report suspicious orders for prescription opioids, the precise scope and contours of any such duties under the CSA, and whether the Defendants violated any such duties. This is the "central point of dispute" in the case because Plaintiff's claims depend on this theory. *Gunn*, 568 U.S. at 259.

Plaintiff argues that there is no disputed federal question because Plaintiff did not plead a federal cause of action, Remand Motion at 6-11, again missing the point.  Plaintiff cannot avoid an actually-disputed federal issue simply by omitting reference to the applicable law from its Complaint.  As in *Bender v. Jordan*, "this case presents a nearly pure issue of federal law." 623 F.3d 1128, 1130 (D.C. Cir. 2010).  The great weight of authority favors staying opioid cases to await transfer to the Opiate MDL.  (*See* Stay Motion, Dkt. No. 12-1).

### C.  The Federal Issue Is Substantial.

The federal issue presented is substantial, because the federal government has a strong interest in a nationally uniform approach to controlled substances.  *See Gunn*, 568 U.S. at 260. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.*  This third factor is met because Congress recognized that the illegal uses of controlled substances "have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such

traffic." 21 U.S.C. § 801(2), (6).  Indeed, this is one of the primary reasons over 2,600 cases—raising nearly identical issues—are currently pending in the Opiate MDL.[5]  In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control."  H.R. Rep. No. 91-1444 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4572.  The federal courts and the Opiate MDL court are best positioned to uniformly interpret these duties.  Just as the federal government had a direct interest in vindicating its own administrative actions to recover delinquent taxes in *Grable*, so too here does the federal government have a direct interest in administering the regulatory system Congress put in place with respect to opioid medications.

In fact, the plaintiffs in the Opiate MDL filed a motion asking Judge Polster to rule that registrants under the federal CSA have a statutory and regulatory duty to monitor, investigate, and halt suspicious orders of opioids, under their theory that the federal CSA is the underlying source of authority for imposing any such duties on distributors of opioid medications.[6]  *See* Summ. Sheet,

---

[5] Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control."  H.R. Rep. No. 1444 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4572.  The text of the CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."  21 U.S.C. § 801(2), (6).

[6] Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."  *Grable*, 545 U.S. at 317 (footnote omitted); *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

Pls.' Mot. for Partial Summ. Adjudication of Defs.' Duties Under the Controlled Substances Act, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio July 2, 2019), Dkt. No. 1799.  And in its August 19, 2019 "Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing The Controlled Substances Act," the court considered the CSA and DEA's implementing regulations and the duties imposed by them, and then "examine[d] what the Defendants actually did compared to what the law requires."  *See* Order at 5, *In Re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Aug. 19, 2019), Dkt. No. 2483.  This puts beyond doubt that the federal issue is front and center and should be determined by the federal courts.

### D. Resolving The Case In Federal Court Will Not Disrupt The Federal-State Balance.

The federal issue is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.  Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors and manufacturers, and litigating this case in a state court runs the risk of the state court applying federal requirements in a manner in tension or in conflict with the way the federal agency tasked with enforcing the CSA— the DEA—applies them.  Similarly, federal courts have jurisdiction over proceedings seeking to enjoin violations of the CSA.  *See* 21 U.S.C. § 882(a).  Federal jurisdiction is therefore properly exercised under § 1331 to resolve "disputed issues of federal law" under the CSA.

Indeed, Plaintiff's claims are nearly identical to over 2,600 cases already pending in the Opiate MDL.  It defies reason that Plaintiff's case is not similarly capable of resolution in federal court.

**CONCLUSION**

For the foregoing reasons, this Court should stay the remand proceedings until the JPML issues its final ruling on transfer to the MDL.  Alternatively, Plaintiff's motion for remand should be denied.

| | |
|---|---|
| DATED: January 6, 2020 | By: */s/ Matthew A. Jacober*<br>Matthew A. Jacober (51585 (MO))<br>mjacober@lathropgage.com<br>Lauren M. Wacker (62087 (MO))<br>lwacker@lathropogage.com<br>LATHROP GPM LLP<br>7701 Forsyth Boulevard, Suite 500<br>Clayton, MO  63105<br>Telephone: 314.613.2800<br>Telecopier: 314.613.2801<br><br>Christopher Lovrien*<br>Sarah Conway*<br>JONES DAY<br>555 South Flower Street, 50th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 243-2567<br>Facsimile:  (213) 243-2539<br>Email: cjlovrien@jonesday.com<br>Email: sgconway@jonesday.com<br><br>*\* denotes national counsel who will seek pro hac vice admission*<br><br>*Attorneys for Walmart Inc.* |

**CERTIFICATE OF SERVICE**

I, Matthew A. Jacober, hereby certify that the foregoing document was served via the Court's ECF system to ECF registrants and/or via U.S. Mail.

*/s/ Matthew A. Jacober*